```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE SOUTHERN DISTRICT OF IOWA
                         DES MOINES DIVISION
```

IN RE:

NORMAN RONALD FORGET, JR.                     Chapter 7
and WENDY MARIE FORGET

    Debtors.                              Bankruptcy No. 07-00991

COMMUNITY CHOICE CREDIT UNION

    Plaintiff

vs.                                           Adversary No. 07-30096-wle

NORMAN RONALD FORGET, JR.
and WENDY MARIE FORGET

    Defendants.


                            DECISION RE:
                COMPLAINT TO DETERMINE DISCHARGEABILITY

    The matter before the court is the dischargeability of debt owed to Community Choice Credit Union by defendants Norman and Wendy Forget. Final trial of the complaint was held May 22, 2008 in Des Moines. Christopher L. Low appeared as attorney for plaintiff Community Choice. Attorney John J. Scieszinski appeared for the Forgets. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).


### Findings of Fact

    Norman and Wendy Forget filed a joint Chapter 7 petition on April 2, 2007. Within six months prior to that date, the Forgets refinanced two vehicle loans with Community Choice. The Forgets

surrendered the vehicles, and Community Choice sold them for less than the amount of the debt.  Community Choice's claim for the deficiencies is approximately $32,839.34.

From August 1999 until November 2005, Norman Forget was employed by Forget Properties, a firm owned by his parents.  Forget Properties operates rental property and does real estate development.  In their Chapter 7 Statement of Financial Affairs, the Forgets showed their 2005 income as follows:

```
2005 Norman
     Briarwood Grand Apartments           $34,586
     Forget Properties                      5,400
     Grubb & Ellis Mid-America              3,265

2005 Wendy
     J & L Vending                          1,938
     Forget Properties                      3,915

Total for 2005:                           $49,104
```

Exhibit 7.  The Forgets' income for 2004 was also approximately $49,000.  As of the date of their bankruptcy petition, they had not yet prepared their 2006 tax returns but reported that the returns would show a loss from self-employment.  Id.  Their schedule of current income, Schedule I, showed that both debtors were unemployed and that their only income was $295.00 per month for alimony or support.  Id.

In 2005, the Forgets began operating their own franchised businesses.  In August 2005, they opened a franchised parcel shipping store in Indianola known as Mailboxes & Parcel Depot.

In November 2005 they opened a second parcel shipping store in a strip mall on Merle Hay Road in Des Moines.  Sometime in 2005, the Forgets also purchased two Nextel Communications franchised stores, businesses selling and servicing cell phones.[1]  One of the cell phone stores was located in Norwalk and the other was in Indianola, next to the parcel shipping store.

The Forgets paid cash for the first parcel shipping store and for the Nextel stores.  They borrowed operating money from First Bank, using the first store as collateral.  First Bank also had a second mortgage on the Forgets' home to secure a line of credit for their businesses.  Wendy Forget ran the parcel shipping store in Indianola and Norman ran the store on Merle Hay Road.  A sister-in-law of one of the Forgets ran one of the cell phone stores and worked for room and board at the Forgets' home.  Norman's or the Forgets' daughter ran the other phone store.

The merger of Sprint Corporation with Nextel created challenges for the cell phone stores.  Norman testified: "Everybody was switching from Nextel to Sprint, so Nextel was nothing.  It took us a few months to get Sprint together."

An important client of the parcel shipping store on Merle

---

[1] The court finds that purchase of the Nextel stores took place in 2005, because Norman Forget testified that it occurred prior to the merger of Sprint and Nextel.  The merger of the two wireless providers was completed in August 2005.  Matt Sedensky, "Sprint, Nextel Complete Their $35 Billion Merger," USA Today, Aug. 15, 2005, http://www.usatoday.com/money/industries/telecom/2005-08-15-sprintnextel_x.htm.

Hay Road was "e-Sell It," a store that offers services to individuals selling items on eBay. The Merle Hay store had a contract to ship all of the e-Sell It store's parcels. When the e-Sell It store closed in March or April 2006, the Merle Hay store began to have cash flow problems. The Forgets used income from the Indianola store to pay expenses for the Merle Hay store. Sometime between June 15 and July 1, 2006, the Forgets closed the Merle Hay location and moved the business to the same building in Norwalk where their cell phone store was located. The move reduced expenses and improved cash flow. Norman stated that the store "started to pay for itself."

The Forgets operated their businesses through two limited liability companies. The two cell phone stores were owned by Total Faith Investments, LLC, and the parcel shipping stores were owned by another LLC. Norman and Wendy Forget were owners and officers of both LLCs. Although the Forgets ran their stores as employees of the LLCs, they did not have the limited liability companies issue them W-2 forms. Norman said that they "took a draw to pay the expenses for everything."

Norman Forget joined Community Choice Credit Union in August 2003. Prior to October 2006, the Forgets had borrowed money from Community Choice a few times and had repaid the loans in full.

The Forgets purchased a 2006 Jeep Commander through Chrysler Financial on or about August 15, 2006. They applied to Community

4

Choice for a refinancing loan on October 11, 2006. The loan application showed the following employment and income information:

|  | Norman | Wendy |
|---|---|---|
| Employer | Forget Properties | Mailboxes and [Parcel] Depot |
| Start date | 01 Aug 1999 | 09 Sep 1999 |
| Employment income | $3,200/month gross | $6,000/month gross |
| Rental income | $350/month | |

Exhibit 1. The application did not identify the Forgets' job titles. Although the Forgets listed a vehicle loan and three first mortgages among their debts, the only assets shown on the application were their home and a total of $1,025.28 cash deposited in five Community Choice accounts. Their total debt was listed as $630,308.51, with total monthly payments of $4,772.08. The monthly payment on one of the mortgages was shown as "$0.00."

 Community Choice loaned the Forgets $33,075.59 to refinance the Jeep loan at a new interest rate of 6.250% with monthly payments of $644.00. The Forgets made four payments on the Jeep loan prior to filing their bankruptcy petition.

 In late November 2006, the Forgets attempted to purchase a 2007 Chrysler Sebring through Community Choice, but they were turned down for a loan. On December 15, 2006, they purchased the Sebring through Chrysler Financial and in February 2007 refinanced the loan through Community Choice. The employment and

income information on the February 22 loan application showed the following:

|  | <u>Norman</u> | <u>Wendy</u> |
|---|---|---|
| Employer | Mailboxes and Parcel Depot-Net | Packing & Shipping, Inc. |
| State date | 01 Feb 2005 | 09 Sep 1999 |
| Employment income | $2,500/month gross | $3,000/month gross |
| Rental income | $1,900/month | |

Exhibit 3.  The February 2007 application showed that Wendy was the president of Packing & Shipping, Inc.  Despite the large increase in rental income, the 2007 application did not disclose any additional assets.  Cash assets were reduced to $979.29.  Debts shown on the application included what appear to be the Jeep loan and the same mortgage loans.  The total of debts was $639,601.83, with total monthly payments of $5,026.00.

     At the time of making the loan to refinance the Sebring, Community Choice required the Forgets to provide it with copies of business records and their 2005 tax return, the latest return prepared.  The evidence is unclear as to whether the credit union also requested the tax return and business records in connection with the Jeep loan.  The information the Forgets provided to supplement the Sebring loan application was not offered as evidence.  Vicki Delaria, who is a collection manager at Community Choice but is not the officer who made the loan, testified that the information was sufficient to induce the

credit union to make the refinancing loan.  The Forgets borrowed $28,232.41 from Community Choice at 6.750% with payments of $555.00 per month.  The first payment on the Sebring loan was due April 1, 2007.  Exhibit 4.  The Forgets filed their Chapter 7 petition on April 2 without making any payment on the loan.

On March 12, 2007, the Forgets purchased a 2006 Dodge Charger through Chrysler Financial.  None of the debt owed to Community Choice arises from the financing of the Dodge vehicle.

On the application forms for both the Jeep and Sebring loans, the Forgets replied "no" in answer to the question, "have you ever filed for bankruptcy . . . or been a party in a lawsuit?"  Norman Forget previously filed a bankruptcy petition in 1996 or 1997.  As a landlord, Norman has filed actions to collect rent from tenants.  In an action by a concrete subcontractor to foreclose a mechanic's lien for work performed in a housing development, Norman was named as a defendant as a homeowner.  Lawsuits have been filed against Norman's father, Norman Forget, Sr., and against limited liability companies owned by the Forgets.

Between February and April 2007, the Forgets pursued a number of possible sources of cash.  Norman had been talking with a friend about selling one of the businesses in Indianola since early in 2006.  Norman had initially offered to sell for $95,000, but in March of 2007 he lowered the price to $30,000.  In the

7

first or second week of April 2007, Norman learned that his friend was not financially able to purchase the business.

At some point, the Forgets combined the stores in Norwalk or Indianola, or perhaps at both locations, in order to reduce expenses. The Forgets desired to improve efficiency further by combining their businesses into one store, and had applied for a $20,000 grant from Sprint to accomplish the move. The Forgets learned in the second or third week of April 2007 that they would not receive the grant, because Sprint would have required them to move the business before disbursing the funds.

In February 2007, Norman attempted to get a $25,000 home equity loan from Ashworth Funding to consolidate his loans with Community Choice. Ashworth would not lend the money because First Bank refused to release a second mortgage securing the business line of credit. The Forgets had been making irregular payments on their business debt to First Bank. On or about March 23, 2007, First Bank called the loan. It was at that time that the Forgets decided to file for bankruptcy protection.

On the advice of their bankruptcy counsel, the Forgets surrendered the Jeep, the Sebring, and other encumbered assets. Community Choice disposed of the vehicles through a bidding procedure. Delaria explained: "We took [them] to auction first, and auction was giving us less than even loan value. So I took the cars back and took bids for a couple months, and then I ended

up getting almost the loan value out of both of them." Because Community Choice had loaned the retail value of the vehicles, there was a deficiency after sale. The balance on the Jeep loan is $16,466.68 and the balance on the Sebring loan is $16,372.66, for a total of $32,839.34.

First Bank is in the process of foreclosing the mortgage on the Forgets' home. Norman is presently employed by Casey's General Stores as a truck driver; Wendy is working for an office cleaning business.

## Discussion

Community Choice asks the court to determine that the debt owed to it by the Forgets is nondischargeable under 11 U.S.C. § 523(a)(2). The credit union bears the burden of proving by a preponderance of the evidence that the debt is excepted from the debtors' discharges. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991); First Nat'l Bank of Olathe, Kansas v. Pontow, 111 F.3d 604, 608 (8th Cir. 1997).

## 11 U.S.C. § 523(a)(2)(C)

Community Choice alleged in its complaint that the debt arising from the refinancing of the 2007 Sebring should be held nondischargeable under § 523(a)(2)(C), which provides in relevant part that consumer debts aggregating more than $550 for luxury

9

goods incurred within 90 days of the bankruptcy filing are presumed to be nondischargeable. In closing argument, Community Choice withdrew this claim, making it unnecessary for the court to decide whether the Sebring is a "luxury good" or whether § 523(a)(2)(C) applies to a refinancing loan. See Lorain County Bank v. Triplett (In re Triplett), 139 B.R. 687, 690-91 (Bankr. N.D. Ohio 1992) (finding new Beretta was a luxury good considering its age, price, and number of other vehicles owned); Aetna Finance Co. v. Neal (In re Neal), 113 B.R. 607, 609 (B.A.P. 9th Cir. 1990) (§ 523(a)(2)(C) applies to debts whose consideration was sale of luxury goods, not to loans of unrestricted cash). The claim under § 523(a)(2)(C) will be dismissed.

## 11 U.S.C. § 523(a)(2)(A)

In order to establish nondischargeability under § 523(a)(2)(A), a creditor must prove (1) the debtor made a false representation; (2) at the time the representation was made the debtor knew it was false; (3) the debtor subjectively intended to deceive the creditor at the time he made the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged. Thul v. Ophaug (In re Ophaug), 827 F.2d 340 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59, 116 S.Ct. 437 (1995).

10

Community Choice argues that the debt is nondischargeable because the Forgets made false representations of their intent to repay the loans and of their ability to repay the loans.  The credit union contends that the Forgets should have known that they could not have made the payments for the Jeep and Sebring because of the condition of their businesses.

Community Choice's argument that the Forgets falsely represented an ability to repay the loans seems to overlap with their claim under § 523(a)(2)(B), discussed below.  A false statement actionable under § 523(a)(2)(A) must be a statement "other than a statement respecting the debtor's . . . financial condition."  Sections 523(a)(2)(A) and 523(a)(2)(B) are mutually exclusive.  <u>Land Investment Club, Inc. v. Lauer (In re Lauer)</u>, 371 F.3d 406, 413 (8th Cir. 2004).

Even assuming its claim for false representation is distinct from its claim under § 523(a)(2)(B), Community Choice has not met its burden of proving that the Forgets made knowingly false statements with the intent to deceive.  A promise to perform a future act is an actionable representation only when made with an existing real intention not to perform. <u>Hagarty v. Dysart-Geneseo Comm. School District</u>, 282 N.W.2d 92, 95 (Iowa 1979); <u>Grefe v. Ross</u>, 231 N.W.2d 863, 867 (Iowa 1975).  The evidence does not support the contention that the Forgets, at the time the loans were made, did not intend to repay them or knew they would not be

11

able to make the payments.  They made the payments on the Jeep loan up until filing their bankruptcy petition.  They made a number of efforts to raise cash in early 2007, including applying for a home equity loan.  If any of these efforts had come to fruition, the money could have been used for living expenses including car loan payments, even if it was not used to pay down the car loans in a lump sum.  The Forgets needed vehicles in order to work, but they surrendered them on the advice of their bankruptcy counsel.  Community Choice's claim under § 523(a)(2)(A) should be dismissed.

### 11 U.S.C. § 523(a)(2)(B)

Community Choice claims also that the debt should be held nondischargeable under § 523(a)(2)(B), which provides that a Chapter 7 discharge does not discharge a debtor from any debt–

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> . . .
>    (B) use of a statement in writing--
>       (i) that is materially false;
>       (ii) respecting the debtor's or an insider's financial condition;
>       (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>       (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).  It appears to be undisputed that the loan applications, Exhibits 1 and 3, are statements in writing

respecting the debtors' financial condition within the meaning of the statute.  See American National Bank v. Dalcourt (In re Dalcourt), 354 B.R. 868, 874 (Bankr. N.D. Iowa 2006) (statement of ability to generate income, or that provides overall view of ability to pay debt falls within § 523(a)(2)(B)).

The applications are incorrect or incomplete in several respects.  They do not include the values of the Forgets' real estate interests or the interest rates on the Forgets' secured loans.  Community Choice apparently did not ask for this information and did not rely on it in making the vehicle loans.  The officer who made the loans was not a witness, but some information may have been copied from an older loan application without updating the information.  For example, although the Forgets' businesses were not started until 2005, Wendy's employment start date was shown as September 1999.  Norman Forget denied that he had ever filed for bankruptcy or been a party to a lawsuit, but Community Choice has not shown that this statement was made with an intent to deceive.  Even if Norman knowingly concealed a ten-year-old bankruptcy filing, Community Choice has not shown that it relied on the false statement.

Community Choice's primary argument is that the Forgets intentionally misstated their income in order to obtain the vehicle loans.  In October 2006, Norman and Wendy Forget stated that their gross monthly income from employment was $3,200.00 and

13

$6,000.00, respectively. In February 2007, they said they had gross monthly employment income of $2,500.00 and $3,000.00. The court rejects the suggestion that the Forgets had no income at the time of making the loan applications. Their bankruptcy Schedule I showed they were unemployed because their businesses had failed. Norman said that at the time of the loans, the Forgets were taking draws from the businesses in the amounts reported.

The court concludes that Community Choice did not reasonably rely on these statements of income. The credit union would have had to inquire further to determine what it meant that the debtors had "gross" income from self-employment. It would need to know whether taxes, health insurance or other deductions were taken from their income. This information would be especially critical in view of the Forgets' high costs for debt service, which had risen to $5,028.00 per month by February 2007. The claim under § 523(a)(2)(B) should be dismissed.

IT IS ORDERED that the complaint of Community Choice Credit Union is dismissed.

DATED AND ENTERED  July 2, 2008

William L. Edmonds, Bankruptcy Judge